IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ORTHOFIX INC., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | Case No. 3:13-cv-00828 |
| | ) | |
| -vs- | ) | Hon. Jack Zouhary |
| | ) | |
| ERIC W. HUNTER, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

## HUNTER'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION AND TO ALTER OR AMEND JUDGMENT OR, ALTERNATIVELY, FOR NEW TRIAL

Hunter files this Response in Opposition to Plaintiff Orthofix Inc.'s Motion for Reconsideration and to Alter or Amend Judgment Or, Alternatively, For New Trial ("Motion for Reconsideration").

## INTRODUCTION

"[T]his Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *SEC v. Douglas*, No. 82 CV 29, slip op. at 1 (N.D. Ohio July 25, 2012), (Zouhary, J.), *quoting Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988)(attached as Ex. 1). Despite this tenet, Orthofix asks this Court to reconsider its final judgment in hopes of securing a better outcome the second time around, relying on the same arguments already presented at trial and heard by this Court during post-trial briefing and oral argument. Having brought nothing new (or erroneous) to the table, Orthofix's efforts necessarily fail and its Motion for Reconsideration must be denied.

## ARGUMENT

### I.  Orthofix improperly attempts to use Rules 52(b) and 59(e) to re-argue its case.

Orthofix's Motion for Reconsideration addresses precisely the issues that this Court

1

already specifically identified and gave Orthofix the opportunity to address prior to issuing a final judgment. Without even so much as articulating the standards by which this Court is to evaluate Orthofix's request under Fed. R. Civ. P. 52(b) and 59(e), Orthofix launches into its rehashing of the arguments already considered and properly decided by the Court's final judgment. (Doc. 108.) But as the applicable case law directs, Orthofix's motion does not warrant reconsideration of the final judgment: "A Rule 59(e) motion is not properly used as a vehicle to re-hash old arguments or to advance positions that could have been argued earlier, but were not." *Dow Chem. Co. v. United States*, 278 F. Supp. 2d 844, 847 (E.D. Mich. 2003), *citing Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). The same standard applies to a motion to amend a judgment under Fed. R. Civ. P. 52(b). *Brown v. Owens Corning Inv. Review Comm.*, 2009 U.S. Dist. LEXIS 40538, No. 3:06-cv-2125, at *4 n.1 (N.D. Ohio May 13, 2009) (Zouhary, J.); *see also Macconnel v. Plummer*, 2014 U.S. Dist. LEXIS 17367 (S.D. Ohio Feb. 11, 2014) ("A Rule 52(b) motion does not allow a party to relitigate old issues, to advance new theories, or to rehear the merits of a case.") (internal quotation omitted).

The precise conclusions that Orthofix questions in its Motion for Reconsideration are those that this Court highlighted for post-trial briefing in its Order dated August 8, 2014. (Doc. 99.) With regard to trade secret protection, "in this Court's view, the potentially dispositive fact is whether Orthofix took precautions to maintain the secrecy of the play book." (Doc. 99 at 2.) With regard to breach of the non-disclosure provision, "[a]fter hearing the evidence, this Court believes the 'confidential information' protected by the non-disclosure provision is coterminous with information protected by achieving trade secret status." (Doc. 99 at 3.) The August 8 Order also cited to the *Oxford Global Resources* decision for its holding that non-disclosure agreements may be characterized as noncompetition agreements under Texas law. *See Oxford Global Res., Inc. v. Weekley-Cessnun*, 2005 WL 350580, at *2 (N.D. Tex. Feb. 8, 2005). The parties were invited to

file 15-page briefs on these and other issues, and participated in additional oral argument on August 21, 2014, before this Court issued its final judgment. In its post-trial brief, Orthofix addressed the ways it protected the confidentiality of playbook information, but did not discuss either *Oxford Global* or the coterminous relationship between trade secrets and confidential information.

After having a full and fair opportunity to present its case at trial, plus an additional opportunity to submit post-trial briefing and argument, Orthofix should not now be allowed to reargue its case. Orthofix articulates no basis upon which it should be permitted to present, yet again, arguments that it not only already had the opportunity to make and did make, but arguments that this Court specifically identified for additional briefing. *See Sault Ste. Marie*, 146 F.3d at 374. Orthofix's Motion for Reconsideration is not contemplated by Rules 52(b) or 59(e) and should be denied as a matter of course without reaching its merits.

## II.  Orthofix does not identify any "clear error" of law in the Court's final judgment.

Even if Orthofix is permitted move forward with its motion despite the above case law, "[s]etting aside a prior judgment is only appropriate where there is: '(1) a clear error of law, (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Owens Corning*, 2009 U.S. Dist. LEXIS 40538, at *3, *quoting U.S. ex. rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 507 (6th Cir. 2008). Motions for reconsideration are "of limited appropriateness, and generally justified in only [these] four <u>major</u> situations..." *SEC v. Douglas*, No. 82 CV 29, slip op. at 1 (emphasis added).

In its Motion, Orthofix does not articulate this test or identify which of these four major situations applies to this Court's judgment such that it should be amended or set aside. But because Orthofix did not identify in its Motion any newly discovered evidence, intervening change in controlling law, or manifest injustice, Hunter assumes that Orthofix proceeds under the theory

that the October 24, 2014 decision contained clear errors of law. Orthofix's Motion seems to identify three "errors": (1) the court erred in its consideration of the protection of the playbook under the non-disclosure agreement, (2) the court erred in finding the non-disclosure agreement was unenforceable under Texas law, and (3) the court erred in its determination that the playbook was not a trade secret. Hunter will analyze each in turn.

### A. The Court did not err in finding trade secrets coterminous with confidential information under the employment agreement.

Orthofix claims the playbook can still be protected by the non-disclosure agreement even if it does not rise to the level of trade secret status. Orthofix cites a footnote from a 2006 decision from the Northern District of Texas District Court to explain that confidential information protected from disclosure by agreement need not be protected to the extent that trade secret information must be. *See Corp. Relocation, Inc. v. Martin*, No. 3:06-cv-232-L, 2006 U.S. Dist. LEXIS 69098, at *51 n.17 (N.D. Tex. Sept. 12, 2006). Setting aside that this proposition is dicta since in that case the information qualified for trade secret status, the *Corporate Relocation* opinion does not articulate a less stringent test for confidential information. Rather, the footnote merely implies that the court applied some lesser standard in its alternative analysis of the information in question which fell within the definition of "confidential" under the employment agreement at issue. The *Corporate Relocation* opinion is not instructive and does not inform Hunter or this Court how to evaluate the lesser protections that Orthofix thinks should be applied to Orthofix's "confidential information" in this case.

Further, even if *Corporate Relocation* would apply a lesser standard of protection for confidential information, the Court's decision on this point did not turn on a principle of law. As stated in the opinion, "counsel for Orthofix could not articulate information that would constitute confidential information but not be classified as a trade secret." (Doc. 108 at 16.) Due to this

4

inability of Orthofix to make a factual distinction between its confidential information and trade secrets, and based on the language of the agreement itself, this Court determined that the two were coterminous. Orthofix's Motion for Reconsideration still does not identify what information should be considered "confidential" but not a "trade secret." As a result, even if the case law did support a less stringent test for confidential information, which it does not, neither Hunter nor this Court knows what information Orthofix proposes should be tested. Orthofix fails to show a clear error of law in this Court's decision that Orthofix's "'confidential information' protected by the non-disclosure provision is coterminous with information protected by achieving trade secret status under Ohio law." *Id.*

**B.  The Court did not err in finding the non-disclosure agreement unenforceable under Texas law.**

The court's determination that the non-disclosure agreement is unenforceable under Texas law is supported by case law. Orthofix makes much of the distinction between non-compete agreements and non-disclosure agreements, quoting the oft-cited proposition: non-disclosure provisions "may be enforceable even when a corresponding covenant not to compete is unenforceable." Doc. 114 at 4 n.1, *quoting In re Electro-Motor, Inc.*, 390 B.R. 859, 871-72 (Bankr. E.D. Tex. 2008). Hunter agrees; non-disclosure provisions *may* be enforceable even when a corresponding covenant not to compete is unenforceable. Orthofix cites no case that holds that non-disclosure provisions are unconditionally enforceable, even when the provision acts as a lifetime non-compete clause without limitation to time or geography. Nor does it cite to a case that holds that non-disclosure provisions cannot ever be construed as non-compete clauses. Importantly, it remains true under Texas law that "[a]n employer may not bar use of general knowledge, skill, and experience" gained during employment. *Brooks v. Excellence Mortgage, Ltd.*, No. 04-13-00106-CV, 2014 Tex. App. LEXIS 5785, at *29-30 (Tex. App. May 30, 2014).

This distinction between general knowledge and protectable confidential information is the guiding principle distinguishing the *Hunter* decision and *Oxford Global* from *Excellence* and *M.N. Dannenbaum.*

After first determining that the "confidential information" protected by the non-disclosure provision was coterminous with information protected by trade secrets under Ohio law, this Court found that without this limited reading, the non-disclosure provision acts as an unenforceable non-compete clause. In other words, the broader reading of the non-disclosure provision that Orthofix wants would act to improperly bar an employee's use of general knowledge, skill and experience in perpetuity. To the contrary, in *Excellence*, the precursor to the court's decision that the non-disclosure agreement was enforceable was its determination that the customer information was in fact confidential and "not located by means other than through [the appellee-company's] confidential information." *Excellence*, 2014 Tex. App. LEXIS 5785, at *33. Again, the protections of a non-disclosure agreement may not go beyond the protection of information that is actually confidential – "[i]n order to be confidential there must be a substantial element of secrecy..." *M.N. Dannenbaum, Inc. v. Brummerhop*, 840 S.W.2d 624, 631 (Tex. App. 1992).

The holdings in *Oxford Global* and *M.N. Dannenbaum* are not irreconcilable, contrary to Orthofix's suggestion. The analysis in *M.N. Dannenbaum* concerned a jury instruction on misappropriation of confidential information, defining confidential information. *Id.* The sentence in question was "[m]atters of public knowledge or of general knowledge in an industry cannot be appropriated as confidential." *Id.* The court determined that this instruction was proper under Texas law. *Id.* at 633. In *Oxford Global,* the court similarly determined that the employer could not claim confidentiality protection for information that constituted general knowledge: "in the employment context presently under consideration, the Court considers the network of acquaintances one comes to know through employment to be an aspect of the 'general

knowledge...and experience acquired in former employment.'" *Oxford Global Res., Inc. v. Weekley-Cessnun*, 2005 U.S. Dist. LEXIS 1934, at \*7 (N.D. Tex. Feb. 8, 2005), *quoting ZEP Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 663 (Tex. App. 1998). The holding in *Oxford Global* does not turn on the "memory test" as Orthofix suggests, but rather a factual finding that the customer information at issue was a part of the general knowledge gained through employment that employers are barred from restricting in perpetuity, contractually or otherwise.

This Court's decision and the holdings in *Oxford Global*, *Excellence*, and *M.N. Dannenbaum* consistently support the same principle – an employer's attempt to use a non-disclosure provision to contractually bar an employee's use of general knowledge, skill, and experience acquired during employment, without restriction, is void and unenforceable. This type of information should be addressed through a limited noncompetition agreement. *See* Doc. 108 at 15, *citing Columbus Bookkeeping & Bus. Servs., Inc. v. Ohio State Bookkeeping, LLC*, 2011-Ohio 6877, at ¶28. Orthofix's Motion for Reconsideration fails to identify an error of law in this Court's conclusion that a broader reading of the non-disclosure provision (not limited to information protected by trade secret status) is unenforceable under Texas law.

C.     **The Court did not err in finding the playbook was not entitled to trade secret protection.**

Orthofix's argument that the playbook was improperly denied trade secret protection does not even raise a purported error of law. Rather, Orthofix seems to acknowledge that this Court applied the correct test for trade secret protection (namely the *Thermodyn* case), but reached an incorrect conclusion in its application of the testimony and evidence presented at trial. Again, this is not the kind of "clear error of law" contemplated by Rules 52(b) and 59(e) and cannot now be reconsidered by this Court.

Still Orthofix launches into a summary of Ohio case law supporting its self-serving

proposition that a confidentiality agreement alone is a reasonable protective measure for a customer list. (Doc. 114 at 7.) There are two major problems with Orthofix's argument: (1) this Court already acknowledged that in some cases an employee confidentiality agreement alone would be adequate to establish trade secret protection (just not in this case) (Doc. 108 at 15), and (2) Orthofix's claimed playbook, as was made abundantly clear at trial, is a compilation of information containing much more than just a customer list. Accordingly, the case law cited does not support the argument that Orthofix makes. In fact, no amount of additional case law discussion can support the argument that Orthofix is trying to make because it cannot change the testimony and evidence presented at trial.

Section B(2) of Orthofix's Motion for Reconsideration contains almost no citation to any legal authority.[1] Instead, Orthofix launches in to a superfluous recitation of the testimony and evidence already presented to the Court at trial. Orthofix's Motion for Reconsideration completely fails to recognize the purpose of Rules 52(b) and 59(e), and apparently fails to recognize the distinction between this Court's dual role as trier of fact and arbiter of law in a bench trial. Despite this failure, Hunter will briefly address Orthofix's attempt to re-discuss and re-frame the testimony and evidence presented at trial.

Orthofix's Motion for Reconsideration would lead one to believe that the Court's finding was based entirely on former supervisor Chris Summers' testimony. But it was not. The court noted a number of ways that Orthofix fell short on efforts to protect the playbook in addition to Summers' failure to guard the secrecy of the information: (1) Orthofix did not have in place a central directive protecting the information, (2) Orthofix took no meaningful steps to collect the

---

[1] The single case law citation in this section is to the *Equifax* case, which Orthofix previously criticized this Court for citing in its opinion. *See* Doc. 114 at 13, *citing Equifax Servs. v. Examination Mgmt. Servx.*, 453 S.E.2d 488, 493 (Ga. Ct. App. 1994). Apparently *Equifax* is applicable to this case for some principles, but not for others.

information, (3) Orthofix did not engage in meaningful efforts to seek return of the information, and (4) wholesale prices were disclosed to Orthofix's customers without confidentiality provisions. (Doc. 108 at 14.) The Court also noted that "much of the playbook information was information generally known within the orthopedic medical device business." *Id.* The Court further identified and considered all of the avenues of protection that Orthofix again identifies in its Motion for Reconsideration, i.e. the password protected sales portal, the employee manual, etc., and made a determination that these efforts were insufficient to preserve trade secret status. *Id.* at 14-15. That said, the testimony of Chris Summers that he did not take steps to protect the playbook goes right to the heart of trade secret analysis. *See Heartland Home Fin., Inc. v. Allied Home Mortg. Capital Corp.*, 258 Fed. Appx. 860, 862 (6th Cir. 2008), *quoting State ex rel. Plain Dealer v. Ohio Dep't of Ins.*, 687 N.E.2d 661, 672 (Ohio 1997)("[a] business or possessor of a potential trade secret must take some active steps to maintain its secrecy in order to enjoy presumptive trade secret status.") Again, no amount of additional argument can get Orthofix around the fact that it did not take adequate steps to protect the secrecy of the playbook.

Orthofix goes so far as to identify a "new" piece of evidence that it asks this Court to consider in addressing its Motion for Reconsideration: the cease and desist letters that Orthofix purportedly sent to Hunter and Lemanski following their departure from Orthofix. These two letters, bearing an Orthofix bates number and produced <u>by Orthofix</u> to Hunter during discovery, are not "new" evidence appropriate for consideration under Rules 52(b) and 59(e). "To constitute 'newly discovered evidence,' the evidence must have been previously unavailable." *Gencorp., Inc. v. American Int'l. Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). These letters were very much available, but Orthofix failed to include them in its exhibit list or bring them to the Court's attention during trial. As a result, the letters are not "newly discovered evidence," cannot now be

considered by this Court, and certainly do not warrant reconsideration of the Court's final judgment under Rules 52 and 59.

In sum, this Court's determination that the playbook does not qualify for trade secret status was a careful, well-reasoned decision, supported by the totality of the evidence presented at trial. Orthofix identifies no "clear error of law" and no "newly discovered evidence" that would allow this Court to reconsider or amend its judgment on this point.

### III.  Orthofix is not entitled to punitive damages.

In its last ditch effort to try and re-coup its alleged lost sales from Hunter and from non-party DJO, Orthofix asks this Court to award punitive damages on its tortious interference claim. Orthofix's First Amended Complaint does not request punitive damages suffered by Orthofix as a result of Hunter's tortious interference (only actual damages). (Doc. 24 at 17.) Orthofix did not request punitive damages be awarded during trial. Orthofix's post-trial brief does not request punitive damages. (Doc. 105 at 13-14.) Orthofix's Motion for Reconsideration does not point the Court to its claimed prior request for punitive damages. Orthofix cannot now for the first time request that punitive damages be awarded when it could have been raised previously. *See Sault Ste. Marie*, 146 F.3d at 374. Nonetheless, if Orthofix is now permitted to submit a post-judgment request for punitive damages on its tortious interference claim, its request fails.

Orthofix frames its punitive damages request in the context of the entirety of its claims against Hunter and tries to maximize its leverage through this Court's negative factual findings about Hunter. But because Orthofix prevailed only on its claim for tortious interference, Hunter's conduct with regard to the 46 open orders is the only conduct that can be considered in evaluating a claim for punitive damages. The Court found that Hunter and Lemanski took 46 open orders for Orthofix stimulators and, after leaving Orthofix, returned those orders to the physicians who

had prescribed them.[2] (Doc. 108 at 17.) This act was not performed with a "state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge." *See Preston v. Murty*, 512 N.E.2d 1174, 1176 (Ohio 1987). In Eric Hunter's own words, he explained his thought process in returning the orders to the physicians rather than to Orthofix:

> A: We gave [the orders] right back to the office and said we don't want to work at Orthofix, and I didn't trust anybody at Orthofix to do a good job, and I didn't want the doctor thinking that suddenly, you know, this was your patient, I gave it to you a long time ago I remember, and then the patient wasn't serviced correctly and I have to say it wasn't me, that's when I had left. So we thought the best thing to do was give them back to the office and say here's the orders we couldn't service.

> Q: Once those orders were written for Orthofix products, weren't they the property of Orthofix?

> A: I thought they were property of the surgeon.

(Tr. Trans. Vol. 1, 230:7-18.) Understanding that these orders were the property of the surgeon (even if that was a misunderstanding), Hunter returned the orders. His doing so was not driven by hatred or ill will, but by his loyalty to his customers and his desire not to let them or their patients down. This conduct cannot be construed as actual malice and does not warrant an award for punitive damages.

However, if Orthofix is awarded punitive damages, its request for punitive damages in the amount of $500,000 is outrageous and unreasonable. An award of punitive damages is limited by the Due Process Clause of the Fourteenth Amendment, which prohibits the imposition of "grossly excessive" punishment on a tortfeasor. *BMW of N. Am. v. Gore*, 517 U.S. 559, 562, 116 S. Ct. 1589, 1592 (1996). Reasonableness of a punitive damages award is evaluated based on (1) degree of reprehensibility, (2) disparity between the punitive damages awarded and the actual harm

---

[2] Orthofix's Motion for Reconsideration incorrectly asserts that Hunter converted the orders to DJO.

inflicted, and (3) the penalties imposed in comparable cases. *Id.* at 575. As discussed, Hunter's state of mind in returning the 46 orders to his customers did not rise to the level of actual malice, and is not the type of conduct contemplated for an award of punitive damages. *Preston v. Murty*, 512 N.E.2d 1174, 1176 (Ohio 1987)(in order to assess punitive damages "a positive element of conscious wrongdoing is always required.") Next, the ratio between punitive damages and the actual harm inflicted by the 46 unreturned orders is not reasonable. Orthofix requests that Hunter pay $500,000 in punitive damages on an award of $62,039 in actual damages. This is more than 8 times the amount of actual damages awarded. An 8:1 ratio of punitive damages to compensatory damages goes far beyond constitutional impropriety, especially in light of the conduct in question. *See Gore*, 517 U.S. at 581-82.

Third, a punitive damages award of $500,000 is not supported by comparable cases. In *Giovinazzi v. Chapman*, a case cited by Orthofix to support the principle that punitive damages should be awarded where compensatory damages alone will not significantly deter the wrongdoer, the court affirmed a judgment awarding compensatory damages in the amount of $12,500 and punitive damages in the amount of $2,500. *Giovinazzi v. Chapman*, No. 44241, 1982 Ohio App. LEXIS 13516, at *12-13 (Ohio Ct. App. Aug. 26, 1982). In *Giovinazzi*, the defendant was found to have improperly solicited plaintiff's customers both during and after her employment with plaintiff. *Id.* at *2. The appellate court affirmed the award of punitive damages based on the fact that the employee solicited customers during her employment. *Id.* at *13. This was not the case for Hunter. His return of 46 open orders to customers, resulting in an award of $62,039 in compensatory damages, does not warrant any punitive damages, let alone punitive damages in the amount of $500,000. Orthofix's request for punitive damages comes too late, is not warranted, and should be denied.

12

Finally, it is not lost on Hunter that Orthofix constantly mentions his new employer and "indemnitor" DJO and specifically does so here in the context of its request for $500,000 in punitive damages. DJO is not a party to this case and neither the evidence presented at trial nor any of the Court's findings indicate that DJO had any involvement whatsoever in the 46 orders that Hunter returned to his former Orthofix customers. DJO has indemnified Hunter for his defense costs and it is presumptuous for Orthofix to imply that DJO would pay an award of punitive damages on Hunter's behalf when it is not contractually obligated to do so. Orthofix's request for punitive damages will only "punish" Hunter and its request for $500,000 to be paid by an individual medical device salesman is truly outrageous.

IV. Orthofix's Motion for Reconsideration is Sanctionable.

Local Rule 7.1(i) allows this Court to award sanctions for filing a frivolous motion. Hunter submits that filing a Motion to Amend Judgment or Alternatively for a New Trial without even addressing the threshold questions of why it is appropriate for the Court to reconsider its ruling is frivolous. Orthofix does not set forth any of the four major situations appropriate for a reconsideration of judgment, but merely rehashes the same arguments that Orthofix had many opportunities to brief and argue before the judgment was entered. Only one of Orthofix's arguments even raises what could be categorized as an error of law (the applicability of the *Oxford Global* holding), and the Motion mainly contains a recitation of trial testimony and evidence. Rules 52(b) and 59(e) were not intended to be used as a platform for a litigant to re-argue its case hoping that the Court would decide differently a second time around. Accordingly, Hunter requests that he be awarded his attorneys' fees and costs incurred in responding to Orthofix's Motion.

## CONCLUSION

For the foregoing reasons, Hunter respectfully requests this Court to deny Orthofix's Motion for Reconsideration and to Alter or Amend Judgment or, Alternatively, for New Trial.

Dated: January 9, 2015                              Respectfully submitted,

                                                   /s/ Laura B. Bacon

                                                   One of the Attorneys for Defendant/
                                                   Counter-Plaintiff

Michael J. Philippi (admitted *pro hac vice*)      Peter R. Silverman
Lisa C. Sullivan (admitted *pro hac vice*)         SHUMAKER, LOOP & KENDRICK, LLP
Laura B. Bacon                                     1000 Jackson Street
UNGARETTI & HARRIS LLP                             Toledo, Ohio 43604
70 W. Madison St, Suite 3500                       419-241-9000 (Telephone)
Chicago, Illinois 60602                            psilverman@slk-law.com
(312) 977-4400 (Telephone)
(312) 977-4405 (Facsimile)
mjphilippi@uhlaw.com
lcsullivan@uhlaw.com
lbbacon@uhlaw.com

## CERTIFICATE OF SERVICE

Laura B. Bacon, an attorney of record, certifies that on January 9, 2015, she caused a copy of the foregoing document to be filed using CM/ECF filing procedures, effecting service on all registered users.

                                                   /s/ Laura B. Bacon

                                                   Laura B. Bacon