IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Orthofix, Inc.,                          Case No. 3:13 CV 828

             Plaintiff,          MEMORANDUM OPINION
                                   AND ORDER
    -vs-
                                   JUDGE JACK ZOUHARY
Eric W. Hunter,

             Defendant.

## INTRODUCTION

The parties tried their claims to the Bench in July 2014. In October 2014, this Court issued judgment, finding in favor of Defendant Eric Hunter on Plaintiff Orthofix's claims of misappropriation and breach of contract, and in favor of Orthofix on its tortious interference claim against Hunter, awarding Orthofix $62,039 in damages. This Court also issued judgment in favor of Hunter on his counterclaim for unpaid commissions, awarding him $8,710 (Doc. 109).

Orthofix moves under Federal Civil Rule 52(b) for reconsideration and to alter or amend the judgment or, alternatively, for a new trial under Federal Rule 59 (Doc. 114). Hunter opposes (Doc. 116). For the reasons stated below, the Motion is denied.

## BACKGROUND

This Court thoroughly detailed the evidence presented in this case in its Memorandum Opinion and Order (Doc. 108). In short, Hunter was a sales representative for Orthofix, primarily for its bone-growth stimulators, from 2000 until he abruptly quit in November 2012 and began working for DJO, an Orthofix competitor. Working with another Orthofix sales representative, Bob Lemanski, Hunter

used his relationships with doctors to turn a number of Orthofix customers into DJO customers following his departure.

Orthofix responded by suing Hunter (and Lemanski in another court). Orthofix brought claims of breach of the non-compete provision in Hunter's employment contract, breach of the confidentiality provision in the contract, misappropriation of trade secrets under the Ohio Uniform Trade Secret Act ("OUTSA"), and tortious interference. Hunter responded by filing a Counterclaim seeking various declarations from this Court and an award of disputed unpaid commissions and expenses.

After the case was filed, the parties entered into an agreement to reform the non-compete provision of Hunter's employment contract (*see* Doc. 47). This Court held, and the parties agreed, that the non-compete provision as written was overbroad and unenforceable under Texas law (Doc. 45). With the reformation, the non-compete claim was dismissed from the case, and the parties proceeded to try Orthofix's claims during a three-day trial. This Court found Orthofix failed to establish that the general customer and pricing information possessed by Hunter constituted a trade secret under Ohio law, and that Orthofix failed to establish a breach of the confidentiality provision under Texas law. However, this Court found that Hunter tortiously interfered with Orthofix's business by failing to provide Orthofix certain customer orders for its products and awarded Orthofix $62,039 in damages.

Orthofix now moves for this Court to reconsider, alter or amend its findings and judgment, or hold a new trial. It raises three issues with this Court's findings: (1) this Court's analysis of the breach of confidentiality provision is incorrect; (2) this Court erred when it determined the evidence did not support a finding that the information Hunter took constituted a trade secret under Ohio law;

2

and (3) it asks (for the first time) that this Court award $500,000 in punitive damages for the tortious interference claim.

## STANDARDS

Federal Civil Rule 52(b) allows a party to move the court to amend its bench findings or make additional findings and amend its judgment accordingly. "A Rule 52(b) motion does not allow a party to relitigate old issues, to advance new theories, or to rehear the merits of a case." *Leasure v. AA Advantage Forwarders*, 2009 WL 1883907, at * 1 (W.D. Ky. 2009) (internal quotation marks and citation omitted). A district court may grant a motion to alter or amend judgment only if there is: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent a manifest injustice." *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 496 (6th Cir. 2006).

A motion to amend a court's findings and judgment may be accompanied by a motion for a new trial under Rule 59. *Leasure*, 2009 WL 1883907, at *1. Federal Civil Rule 59(a)(1)(B) allows a party to move for a new trial following a bench trial "for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Under Rule 59(a)(2), "the decision to grant a new trial lies within the sound discretion of the trial court." *EEOC v. JBS USA, LLC*, 2014 WL 298625, at *4 (D. Neb. 2014) (quoting *Howard v. Missouri Bone & Joint Ctr., Inc.*, 615 F.3d 991, 995 (8th Cir. 2010)).

## ANALYSIS

### Breach of Confidentiality Provision

Orthofix appears to argue that by finding in favor of Hunter on this claim, this Court committed a "clear error of law." However, as Hunter points out, Orthofix largely rehashes arguments

3

it already presented to this Court, which is inappropriate under Federal Civil Rule 52(b). Nonetheless, this Court will address the merits of Orthofix's arguments.

This Court agrees with Orthofix's contention that OUTSA does not preempt contractual remedies (Doc. 114 at 2–3), but this Court's prior Order did not find the claim preempted. Rather, this Court noted that the expansive confidentiality provision, which specified that Hunter could "never use" confidential information acquired during his Orthofix employment, was unenforceable under Texas law without a narrowed understanding of "confidential information." Without such a limited reading, the lifetime ban included the identity of customers (even though readily identifiable as neuro and orthopedic surgeons) and vague terms such as "sales methods" and "business strategies." The net effect of such a sweeping and all-encompassing non-disclosure provision is an unenforceable non-compete, and under Texas law, "[a]n employer may not bar use of general knowledge, skill, and experience" gained during employment. *Brooks v. Excellence Mortgage, Ltd.*, ___S.W.3d___, 2014 WL 2434583, at *11 (Tex. Ct. App. 2014).

Because the confidentiality provision would be unenforceable without a narrowed understanding, this Court concluded the parties intended to protect similar information that would be protected under OUTSA. And, perhaps more to the point, this Court repeatedly questioned counsel during the course of the trial and related hearings to identify what information was covered by the confidentiality provision that was not also a claimed trade secret. Counsel for Orthofix "could not articulate information that would constitute confidential information but not be classified as a trade secret" (Doc. 108 at 16). And, the claimed trade secret in this case constituted "general knowledge, skill and experience." This Court finds no legal error.

4

**Trade Secret Status**

Orthofix next challenges this Court's finding that the information comprising the "playbook" did not constitute a trade secret under Ohio law. On this point, Orthofix simply disagrees with this Court's assessment and weighing of the evidence presented during the trial. This is not a legitimate basis for a Federal Civil Rule 52(b) motion.

Orthofix makes a veiled contention that this Court applied the incorrect standard in its analysis of Orthofix's efforts to protect the playbook, noting that this Court "appears to have applied a higher standard in this case than the standard it correctly applied in *Thermodyn*," even though this Court quoted *Thermodyn v. 3M Co.*, 593 F. Supp. 2d 972 (N.D. Ohio 2008) in its Order (Doc. 108 at 11–12). Orthofix further argues that because Hunter signed a confidentiality agreement "Ohio law compels a finding that the playbook was reasonably protected" (Doc. 114 at 8). Not so. In fact, Ohio law states the contrary -- the efforts to maintain secrecy must be "reasonable under the circumstances." R.C. § 1331.61(D). A pro forma confidentiality provision alone is not *per se* conclusive evidence an employer took sufficient measures.

**Punitive Damages**

Orthofix now asks this Court, for the first time, to award $500,000 in punitive damages on its tortious interference claim. Orthofix's Amended Complaint did not request punitive damages for tortious interference (Doc. 24). Orthofix did not ask for an award of punitive damages before or after the case was submitted to this Court as the factfinder. It did not make such a request in post-trial briefing, only requesting "$62,039.00 in lost profits on Orthofix's claim for tortious interference" (Doc. 105 at 13–14). Orthofix cannot request punitive damages for the first time by way of a Federal Civil Rule 52(b) motion, and it provides no legal support for doing so. *Cf. Heil Co. v. Evanston Ins.*

5

*Co.*, 690 F.3d 722, 729 (6th Cir. 2012) (noting that a litigant has a due process right to notice that punitive damages may attach to certain conduct). This request is denied.

### New Trial

Orthofix presents no basis distinct from the above complaints to support its request for a new trial. This Court declines to exercise its discretion to grant a new trial.

### Sanctions

Hunter moves this Court to sanction Orthofix for filing this Motion (Doc. 116 at 13). Hunter correctly notes that Orthofix's Motion largely fails to identify a legitimate basis under Federal Civil Rules 52(b) and 59 for reconsidering the findings and judgment or for a new trial. This is a close call, largely rearguing prior arguments and second-guessing factfindings. Other judges with shorter fuses might strike back with a sanction. However, this Court, with some pause, declines to do so.

## CONCLUSION

Finding no basis to alter or amend its findings or to grant a new trial, Orthofix's Motion for Reconsideration and to Alter or Amend Judgment or, Alternatively, for a New Trial (Doc. 114) is denied. Hunter's request for sanctions (Doc. 116 at 13) is also denied.

IT IS SO ORDERED.

                                         s/ *Jack Zouhary*
                                         JACK ZOUHARY
                                         U. S. DISTRICT JUDGE

February 4, 2015